## National Exchange Bank of Wheeling, West Virginia v. Venable.

(Decided February 17, 1925.)

Appeal from Boyd Circuit Court.

Fraudulent Conveyances—Assignment of Stock by Husband to Wife Held Not Fraudulent as to Former's Creditors.—Assignment of corporate stock by husband to wife for fair price, to obtain money to pay husband's note, secured by stock, held not fraudulent as to husband's creditors, though made pending suit against husband, in absence of proof that he was insolvent at time.

S. S. WILLIS for appellant.

JOHN W. WOODS for appellees.

Opinion of the Court by Commissioner Hobson—Affirming.

About the year 1915 E. W. Venable owed C. F. Lowther and they discounted the notes with the National Exchange Bank of Wheeling, West Virginia. When the notes matured they were renewed quite a number of times and, finally, the bank insisted on payment. Suit was brought and judgment recovered against E. W. Venable for $4,227.25 on January 17, 1917. On December 2, 1920, the bank brought this suit against E. W. Venable and his wife, Mary S. Venable, to subject to its debt eighty shares of stock in the Crystal Bank Collieries Company, alleging that this had been fraudulently transferred to the wife by the husband with intent to cheat, hinder and delay his creditors. The allegations of the petition were controverted by the wife. Proof was taken and on final hearing the circuit court dismissed the petition against Mrs. Venable. The bank appeals.

Venable and his wife at the time lived in Huntington, West Virginia. The transactions in controversy occurred there, but the statute of West Virginia is practically the same as ours as to fraudulent conveyances, as shown by the proof. The facts proved by the wife are these: She owned certain lots in Huntington. This stock had been pledged to a bank to secure a note of her husband. Payment was insisted on; he had no way to raise the money; she then agreed with him to sell a lot she owned in Huntington and pay the money to the bank, and he for this agreed to assign to her the stock. This was

in January, 1917. She sold the lot and $2,989.95 of her money thus raised was paid for the stock. The stock was then transferred to her on the back of the certificates, and on December 2, 1918, the certificates were turned in and new certificates were issued to her. The price paid for these certificates was fair. The husband beside this owed the wife five or six thousand dollars, which she paid for him by a mortgage on other property that she owned, which was sold for the debt. She and he both signed the notes but they were given for the husband's debt.

It is true that the assignment by the husband to the wife was made after the suit had been brought by the bank against him for the debt now in controversy, but it is also true that he had to raise money at the time to pay on the other debt for which this stock was pledged. The proof is clear that the wife sold her property and paid the money on the agreement that the stock was to be transferred to her, and there is no showing that at that time this was not the fair value of the stock. The transfer was in fact made on the books of the company and new stock issued to her two years before this suit was brought. There is no proof that the husband was at the time insolvent. It appears that since all of these transactions she received $3,900.00 for the value of her potential right of dower in a tract of land he owned, and there is no showing that this land would not have paid off all that he owed at that time. The record sustains the conclusion of the chancellor that E. W. Venable was not shown to be insolvent at the time the transfer in question was made to his wife. When the stock was issued to her and transferred on the books of the company all was done that could be done to make the transfer a matter or record. The facts of this case bring it within the rule laid down in Morgan v. Eversole, 171 Ky. 624:

"While it is true that transactions between husband and wife will be closely scrutinized where the rights of creditors are involved, we find in the record no facts from which it could be reasonably inferred that Clark Eversole executed the title bond for the fraudulent purpose of cheating his creditors, or that Mrs. Eversole knew of such fraudulent purpose. On the contrary, the evidence makes it clear that the bond for title was executed for a valuable consideration actually paid by Mrs. Eversole, and that the

sum so paid was used in a lawful enterprise. Under the circumstances, the transfer and title bond were not fraudulent as to creditors. Taylor, et al. v. Cooley, et al., 49 S. W. 355; McCandless v. Rea, et al., 56 S. W. 10.''

To same effect see National Roofing Co. v. Smith, 165 Ky. 848; Pike Co. v. Sowards, 147 Ky. 37.

Judgment affirmed.